UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 16-18621-JKO
                                                          Chapter 13
DANIEL PANSKY,
                    Debtor.
_____/

**CREDITORS, BARRY S. FRANKLIN & ASSOCIATES, P.A.,
AND PHILLIPS LANIER, PLLC'S, EXPEDITED AMENDED MOTION
FOR RELIEF FROM AUTOMATIC STAY AND WAIVER OF 14 DAY STAY**

BASIS FOR EXPEDITED HEARING

CREDITORS REQUEST AN EXPEDITED
HEARING ON THE INSTANT MOTION. THE
DEBTOR HAS A MEDIATION ON NOVEMBER
29, 2016 IN THE LAWSUIT MENTIONED
BELOW. CREDITORS BELIEVE THAT THE
DEBTOR WILL ATTEMPT TO SETTLE THE
LAWSUIT, ABSCOND WITH THE PROCEEDS
AND DISMISS THIS BANKRUPTCY IF
IMMEDIATE RELIEF IS NOT GRANTED.

Creditors, Barry S. Franklin & Associates, P.A., ("Franklin") and Phillips Lanier, PLLC,

("Phillips") (together the "Creditors"), pursuant to 11 U.S.C. § 362(b)(2), Rule 4001 of the Federal

Rules of Bankruptcy Procedure and Local Rule 4001-1, request that this Court enter an order lifting

the automatic stay and in support thereof state as follows:

1.      This is a Motion for Relief from the Automatic Stay for the Creditors to pursue

their *in rem* state court remedies against the stock owned by the Debtor in Rapid Realty, Inc.

("**Rapid Realty**").

2.      The Debtor is attempting to negotiate a settlement of an accounts receivable owned

by Rapid Realty. Creditors are concerned that the Debtor will negotiate a settlement, dismiss this

bankruptcy proceeding and then transfer and/or otherwise abscond with the funds from the settlement in an attempt to avoid paying Creditors.

3.      On August 23, 2016, the Debtor filed his Amended Schedule B listing his 90% interest in Rapid Realty as having a value of $100.00. [ECF # 26].   The Debtor has proposed a Chapter 13 Plan that pays general unsecured creditors $50.00 per month for 36 months. [ECF # 16]. The Debtor does not treat the Creditors as secured.

### (A) State Court Lawsuit by Debtor

4.      On October 8, 2013, the Debtor filed a complaint instituting a lawsuit captioned, *Pansky, individually and as shareholder of Rapid Realty, Inc., v. Bratkovsky, et. al.*, Case No. 2013-032073-CA-01, ("**State Court Lawsuit**") in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "**State Court**").  A true and correct copy of the Eighth Amended Complaint for Damages and Injunctive Relief is attached as **Exhibit A.**  In the State court Lawsuit, the Debtor's business, Rapid Realty, sued his Former Wife, Victoria Pansky, for his portion of a $350,000.00 commission and Mark Bratkovsky for the Debtor's portion of commissions totaling upwards of $718,750.00.

5.      Based upon information and belief, there is a mediation currently scheduled in the State Court Lawsuit for November 29, 2016.

### (B) Creditors' Interest

6.      Franklin has a Charging Lien Order and Money Final Judgment in Favor of the Law Firm of Barry S. Franklin & Associates, P.A. against the law firm's former client, Daniel Pansky dated March 14, 2013 ("**Franklin Judgment**"), in the family case between the Debtor and his now former wife, in the amount of $77,498.66.

7.      On May 7, 2014, the Franklin Judgment was recorded with the Florida Department

of State, Division of Corporations.

8.      Phillips has a Supplemental/Updated Charging Lien Order and Money Final Judgment in favor of the Law Firm of Phillips Lanier against the law firm's former client, Daniel Pansky dated May 14, 2014, ("**Phillips Judgment**") in the family case between the Debtor and his now former wife, in the amount of $35,364.29.  On June 9, 2014, the Phillips Judgment was recorded with the Florida Department of State, Division of Corporations.

## **BASIS FOR RELIEF FROM THE AUTOMATIC STAY**

9.      Pursuant to 11 U.S.C. §362(d), cause exists for providing Creditors relief from the Automatic Stay and there is a lack of adequate protection of the rights of the Creditors.  Rapid Realty is not an ongoing business concern and the Debtor lists the value of his interest at $100.00. Therefore, based upon the liens that Creditors have against the Debtor' interest in Rapid Realty and the Debtor's stated value of those shares, Creditors assert that there is no equity in the shares and the shares are not necessary for an effective reorganization.

10.     Pursuant to 11 U.S.C. §362(f), relief from the Automatic Stay is necessary to prevent irreparable harm to Creditors' interest in the value of the Debtor's interest in Rapid Realty.

11.     Pursuant to Florida Statutes §§ 55.202(2) and 56.061, Creditors have a security interest in the Debtor's shares of Rapid Realty.

12.     Based upon their judgments, Creditors have secured liens on the Debtor's shares of stock in Rapid Realty.

13.     The Creditors request relief from the automatic stay so that the Creditors can levy on the Debtor's interest in the shares of stock.

14.     The Debtor listed Rapid Realty as having a $100.00 interest on his Amended Schedule B.  The Debtor has not factored any value into his liquidation test and has not treated the

Creditors as secured.

15.     Initially, the Debtor filed the lawsuit on behalf of himself and as shareholder of Rapid Realty.  On or before the Eighth Amended Complaint was filed Rapid Realty became the sole plaintiff.

16.     The Creditor's concerns that the Debtor will attempt to abscond with the settlement proceeds is borne out by the Debtor's lack of candor in his schedules, Statement of Financial Affairs and Chapter 13 Plan.  Therefore, there is cause to grant the Creditors relief from the automatic stay.

17.     Creditors believe that after the levy, they will be in a better position to prosecute the lawsuit than the Debtor.

18.     Therefore, the Creditors request that this Court grant immediate stay relief to Creditors to pursue their *in rem* relief against the Debtor's shares of stock in Rapid Realty, Inc. and that the Creditors be able to pursue and liquidate the assets of Rapid Realty, Inc. after levy.

19.     The Creditors request waiver of the 14 day stay pursuant to Rule 4001(a)(3).

WHEREFORE, the Movants, Creditors, Barry S. Franklin & Associates, P.A., and Phillips Lanier, PLLC, respectfully request that this Court enter an Order granting relief from the automatic stay as outlined herein and for such other and further relief as the court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent in the manner stated this 21st day of November, 2016, to all parties enumerated below.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

FURR COHEN
*Attorneys for Creditors*
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
Telephone:  (561) 395-0500
Facsimile:  (561) 338-7532


BY:_____/s/ Alan R. Crane_____
       Alan R. Crane
       Florida Bar No.: 0963836
       E-Mail: acrane@furrcohen.com

**VIA ECF:**

- Stephen C Breuer    stephen@moffa.law, atty_ellison@trustesolutions.com,allusers@moffa.law,ecf@moffa.law,stephen@ecf.courtdrive.com
- Alan R Crane    acrane@furrcohen.com, pmouton@furrcohen.com;atty_furrcohen@bluestylus.com
- Yanique A Johnson    yanique@moffa.law, atty_ellison@trustesolutions.com,allusers@moffa.law,ecf@moffa.law,yanique@ecf.courtdrive.com
- John A. Moffa    john@moffa.law, atty_ellison@trustesolutions.com,allusers@moffa.law,ecf@moffa.law,johnm@ecf.courtdrive.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Matthew I Rochman    Matthew.Rochman@usdoj.gov, shannon.patterson@usdoj.gov;milton.pacheco@usdoj.gov
- Robin R Weiner    ecf@ch13weiner.com;ecf2@ch13weiner.com

IN THE CIRCUIT COURT OF 11TH — 

IN THE CIRCUIT COURT OF 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

RAPID REALTY, INC., a Florida corporation,

Plaintiff,

v.

MARK BRATKOVSKY, REALTY R US,
VICTORIA BLINSTER REAL ESTATE GROUP,
LLC f/k/a Victory Luxury Properties, LLC,
VICTORIA PANSKY a/k/a VICTORIA
BLINSTER, INNA CHMORGOUNOVA and 9701
LLC, a Delaware limited liability company d/b/a
THE RESIDENCES AT THE 9701 LLC BAL
HARBOUR RESORT,

Defendants.

_____/

Case No. 13-32073 CA 01
Complex Business Court

## EIGHTH AMENDED COMPLAINT

Plaintiff, Rapid Realty, Inc. ("**RRI**"), through undersigned counsel, sues Defendants and

states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      RRI is a Florida corporation doing business in Broward County, Florida.

2.      Defendant Victoria Blinster f/k/a Victoria Pansky ("**Blinster**") is over the age of

majority, not in military service, a resident of Miami-Dade County, and otherwise *sui juris*. She

was formerly married to Daniel Pansky, and was formerly President and formerly a 50%

shareholder of RRI.

3.      Defendant Victoria Blinster Real Estate Group, LLC f/k/a Victory Luxury

Properties, LLC ("**Blinster Real Estate**") is a limited liability company organized under the laws

of the State of Florida, wholly owned by Blinster.

4.    Defendant Mark Bratkovsky ("**Bratkovsky**") is a resident of New York State and a member of the New York State Bar. As further alleged below, he participated in various schemes and committed torts in Miami-Dade County, Florida.

5.    Realty R Us ("**Realty R Us**") is a New York licensed Real Estate agency, wholly owned by Bratkovsky.

6.    Defendant Inna Chmorgounova ("**Chmorgounova**") is a resident of Miami-Dade County, over the age of majority, not in military service, and otherwise *sui juris*.

7.    Defendant 9701 Collins Ave, LLC ("**9701 LLC**"), is a Delaware corporation in good standing with its principal place of business in Orlando, Florida and a real estate developer of the hotel/condominium project located in Miami-Dade County, Florida, known as The Residences at The 9701 LLC Bal Harbour Resort ("**The Residences**").

8.    This Court has jurisdiction over the matter in light of the amount in controversy, the statutory and common law claims raised in this complaint, and because Defendants either reside in, or the cause of action accrued in Miami-Dade County, Florida.

9.    Venue is appropriate because Defendants either reside in or the cause of action accrued in Miami-Dade County, Florida.

## GENERAL FACTUAL ALLEGATIONS

10.    Daniel Pansky is the sole authorized officer and shareholder of RRI.

11.    Blinster was an officer and shareholder of RRI, and served as its licensed broker until January 17th 2013, when she resigned as RRI's licensed broker.

2

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

♦ **Blinster opens a Secret Bank Account to Steal RRI's Assets** ♦

12.     From the time of its inception through September 2012, RRI had only one bank account, at Wells Fargo Bank (the **"Wells Fargo Account"**). Daniel Pansky and Blinster were the sole signatories of the Wells Fargo Account.

13.     In or about September 2012, without providing notice to RRI or Daniel Panksy, Blinster secretly opened a RRI bank account at Chase Bank, NA located at 17760 Collins, Ave., Sunny Isles Beach, FL 33160 (the **"Chase Account"**).

14.     Blinster opened the Chase Account with the intent to conceal, divert and ultimately steal income otherwise due to RRI and deposited a yet to be determined amount of business income due and owing to RRI into the Chase Account.

15.     All of the funds that Blinster diverted from RRI and deposited into the undisclosed Chase Account are identifiable funds, and the assets and property of RRI.

♦ **Diversion of the $347,000 RRI Commission** ♦

16.     On or about December 4, 2012, Blinster – while still president, broker, and 50% shareholder of RRI – received a commission check made payable to RRI for $347,500 (the **"$347,500 Commission Check"**). The commission was for the sale of Unit 2303-S at The Residences. The purchaser was Galina Beglova and the seller was 9701 LLC. The property sold for $6,950,000. A copy of the check and the HUD statement are attached hereto as Composite Exhibit "1".

17.     On December 24, 2012, without providing notice to RRI and instead of depositing the commission check into the Wells Fargo Account, Blinster deposited the $347,000 Commission Check into the RRI Chase Account, which only Blinster controlled.

3

18.     Blinster converted RRI's $347,000 to her own personal use and benefit, including but not limited to: (a) paying off the lease to her automobile ($15,000); (b) paying her own accountant's fees ($7,000 and $8,000); (c) paying back "personal loans" to her parents ($50,000); (d) paying off various personal credit cards; (e) paying moving expenses; (f) paying college tuition for her son; (g) purchasing furniture for her own and sole use; (h) pre-paying her residential lease in advance; and/or (i) making various cash withdrawals and wire transfers in excess of $100,000.

19.     On information and belief, Blinster also expended upwards of $50,000 of RRI's funds for use in advertising, and branding of her new company, Blinster Real Estate.

♦ **Blinster conspires with Bratkovsky and Realty R Us**
**and forms a new company to divert RRI's business opportunities and assets** ♦

20.     On or about December 31, 2012 – while still president of and broker of record for RRI – Blinster entered into a "referral agreement" on behalf of RRI with Bratkovsky and Realty R Us (the "**Referral Agreement**"). The agreement documents a "referral" of RRI potential buyers to Bratkovsky and Realty R Us. Further, Bratkovsky and Realty R Us agreed to pay RRI 100% of any commission Bratkovsky and Realty R Us earned as a result of commissions earned relating to the listed prospects. *See* Exhibit "2".

21.     The Referral Agreement was a sham; Bratkovsky and Realty R Us (Broker B) would owe RRI (Broker A), as the *referring agent*, the entire commission received by Bratkovsky or Realty R Us for any sales by Arcus Properties II, LLC and Denis and Olga Rogachev – an amount RRI would already be entitled to as the referring broker.

22.     Other than to divert RRI's assets, no valid reason existed for RRI – a Florida licensed real estate company – to "refer" RRI's existing client to Realty R Us – a New York real estate company without a license in Florida. Moreover, neither Bratkovsky nor Realty R Us is licensed to act as a real estate broker or salesman in Florida under Section 475.01(1)(a), Fla. Stat.

4

23.     To the extent Bratkovsky and Realty R Us attempted to or did participate in the above transactions, Bratkovsky and Realty R Us were illegally operating as real estate brokers or salespersons contrary to the requirements of Florida Statute § 475.01(4).

24.     On January 3, 2013, Blinster confirmed the existence of this "scheme" in an email she sent on her Gmail email account (vic33180@gmail.com) to Bratkovsky (mblawny@gmail.com) stating:

> "hi Mark, We may need this for our records. We'll figure out $50K, if there's a way not to show it on the books...Thanks, Vic".

The executed Referral Agreement was attached to this email. A copy of the email is attached as Exhibit "3".

25.     Blinster agreed to compensate Bratkovsky in the amount of at least $50,000 for his role in participating in this illegal and diversionary scheme.

26.     After January 17, 2013, Blinster incorporated a newly formed real estate brokerage company called Blinster Real Estate for the purpose of moving all of RRI's prospects and business opportunities to Blinster's company.

27.     One week after creating Blinster Real Estate, Blinster and Bratkovsky entered into two additional referral agreements (the "January 24 Referral Agreements"), wherein they agreed to share in the commissions from the condominium properties referenced therein, attached as Composite Exhibit "4".

28.     In the January 24 Referral Agreement, Bratkovsky and Realty R Us agreed to pay Blinster Real Estate[1] twenty percent of any commission Bratkovsky and Realty R Us earned as a result of commissions earned relating to the listed prospects.

---

[1] At that time, Blinster Real Estate was known as Victory Luxury Properties.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

29. The January 24 Referral Agreements, like the December 31 Referral Agreement, were created to divert, deprive, and ultimately defraud RRI of substantial real estate commissions.

### ♦ The Fraudulent Broker Registrations and an additional $775,000 in Diverted Commissions ♦

30. On or about January 2, 2103, Bratkovsky, Blinster and/or Blinster Real Estate registered clients of RRI with 9701 LLC to receive commissions from the sale of three condominiums at The Residences (the "**Fraudulent Broker Registrations**"), attached hereto as Composite Exhibit 5. The registered buyers were business opportunities of RRI.

31. The Fraudulent Broker Registrations were intended to deprive RRI of more than $725,000 in commissions earned and owed to RRI.

32. Significantly, Bratkovsky had not met nor introduced the RRI clients, Denis Rogachev, Arcus Properties, II, LLC, and Nadezda Streltsova to 9701 LLC.

33. In late January 2013, the three transactions closed generating a total commission of $725,000 that should have been paid to RRI. The details of three transactions that closed are as follows:

a. *Buyer*: Arcus Properties III, LLC: Property Address: 9701 LLC, Unit 2103-S, Bal Harbour, Florida 33154. *Seller*: 9701 Collins Ave, LLC. *Purchase Price*: $6,000,000. *Commission* $300,000 (5%) to Realty R Us.

b. *Buyer*: Arcus Properties IV, LLC: Property Address: 9701 LLC, Unit 2104-S, Bal Harbour, Florida 33154. *Seller*: 9701 Collins Ave, LLC. *Purchase Price*: $4,125,000. *Commission* $206,250 (5%) to Realty R Us.

c. *Buyer*: Sunrise Regency, LLC (Denis Rogachev, Managing Member) 9701 LLC, Unit 2404-S, Bal Harbour, Florida 33154. *Seller*: 9701 Collins Ave, LLC. *Purchase Price*: $4,375,000. *Commission* $218,750 (5%) to Realty R Us.

A copy of the HUD Statements and the Commission checks are attached as Composite Exhibits "6," "7," and "8."

6

34.    Blinster, with the assistance of Bratkovsky and Chmorgounova, embarked upon a deliberate scheme to deprive RRI of assets and income.

35.    Bratkovsky, in collusion and conspiracy with Blinster, committed the scheme alleged above to aid Blinster to steal money from RRI.

36.    Bratkovsky received at least a $50,000 kickback for his part in the conspiracy.

37.    During January and February 2013, Blinster diverted the income RRI was due, and depleted RRI of virtually all of its funds for her own personal benefit, including using RRI's funds to finance her new business entity, Blinster Real Estate, from which she made additional profits from RRI's funds.

38.    On January 28, 2013, Blinster removed approximately $125,000 from the Chase Account.

39.    Of the $125,000 removed, Blinster kept approximately $5,000 cash of these particular funds in her home. She diverted the remaining $120,000 into cash which was placed in a safe deposit box owned by her friend, Defendant Chmorgounova.

40.    As a result of Blinster's various breaches of her fiduciary duty, in concert with the wrongful acts of Bratkovsky, Realty R Us, and Chmorgounova, RRI has been financially devastated, and left unable to operate.

41.    Upon information and belief, Bratkovsky and Realty R Us are in possession and control of funds that rightfully belong to RRI.

♦ **Defendants are Sharing the Fruits of the Scheme** ♦

42.    Although only Defendants are in possession of the documentation that would show fully how they have divided up the assets that rightfully belonged to RRI, Plaintiff has some

7

evidence demonstrating that Blinster and Bratkovsky, through their respective companies, have shared in the proceeds of the fraudulent scheme.

43.     For example, on or about March 6, 2013, Bratkovsky issued a check for $94,250 from Realty R Us made payable to Victory Luxury Properties ("**the March 6th Check**"). The March 6th Check is signed by Bratkovsky and the memo line states "2104, 2013, 2404 Comm", corresponding to the unit numbers of the sales set forth in paragraph 33, above. The March 6th Check is attached as Exhibit "9".

44.     Upon information and belief, Blinster may have entered into side deals with other realtors to funnel real estate transactions to these realtors and receive the commission in cash in an effort to continue to conceal assets and income from RRI.

45.     All conditions precedent to the bringing of this action have occurred, been excused, and/or been waived.

46.     RRI has retained undersigned counsel and has agreed to pay a reasonable attorney fee for their services.

## COUNT I
## BREACH OF FIDUCIARY DUTY AGAINST VICTORIA BLINSTER

47.     RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

48.     Blinster, as a 50% shareholder, officer, and broker of record of RRI, owed RRI fiduciary duties of loyalty, good faith and fair dealing, and not to utilize her position as an officer of RRI to take advantage of RRI.

49.     Blinster breached her fiduciary duties in a number of ways, including but not limited to:

8

a. Secretly transferring virtually all of RRI's working capital at the time ($180,000) to Blinster Real Estate without agreement, consideration or proper notice;

b. Transferring her broker's license to Blinster Real Estate despite being the only broker of record for RRI, without any notice, and without providing RRI an adequate opportunity to find an alternate licensee and properly deal with her unannounced disassociation;

c. Inducing all of RRI's licensed realtors to quit and work for Blinster's new brokerage company, Victory Luxury Properties, LLC;[2]

d. Transferring at least 12 of RRI's listings to Blinster Real Estate;

e. Utilizing RRI's company funds for Blinster's personal use;

f. Secretly opening an additional RRI checking account to conceal RRI funds and using the stolen RRI funds to open a new competing company;

g. Conspiring with Defendants Bratkovsky and Chmorgounova to commit fraud against RRI;

h. Entering into "kickback" agreements with Bratkovsky to divert RRI's real estate transactions to Realty R Us; and

i. Failing to pay RRI the profits of over $1,000,000.00 in commissions, and instead using those funds to finance Blinster's new brokerage.

50.    Blinster committed the above breaches intentionally, or with complete and utter disregard of her fiduciary duties to RRI, and with the intent to deprive RRI of its share of the profits.

51.    As a direct and proximate result of Blinster's breaches, RRI has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against Victoria Blinster for damages in excess of $15,000, pre-judgment interest and costs, and for such other relief as the Court deems just and proper.

---

[2] In February 2013, Victoria changed the name to Victoria Blinster Real Estate Group, LLC.

9

## COUNT II
## CONVERSION AGAINST VICTORIA BLINSTER

52.    RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

53.    The various funds and specifically identified assets and business income identified above, all of which are owned by RRI, have been wrongfully and unlawfully converted by the Defendants to their own use, and that of any person, firm, corporation or entity acting on behalf of and/or in concert with Defendants, and such conversion was effected without the knowledge, permission or authorization of RRI.

54.    The acts of Blinster, as alleged with greater detail above, constitute acts of dominion wrongfully asserted over and inconsistent with, the true and lawful interests and rights of RRI in the property, and are detrimental to RRI's rightful interests.

55.    Blinster and the other Defendants have utilized the identified funds and have converted such funds to their own use and benefit, and to the exclusion and detriment of RRI.

56.    Accordingly, Blinster, and any other person, firm, corporation and entity acting on behalf of and/or in concert with her, is liable for conversion of the identified funds and personal property.

57.    These wrongful acts of dominion or control were willful, malicious, and designed to harm RRI.

58.    As a direct and proximate result of Blinster's conduct, RRI has suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against Victoria Blinster for damages in excess of $15,000, pre-judgment interest and recoverable costs, and for such other relief as the Court deems just and proper.

10

## COUNT III
## CIVIL THEFT AGAINST VICTORIA BLINSTER

59.     RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

60.     As described with more particularity above, Blinster has stolen RRI funds and property in direct violation of Florida Statute § 812.02.

61.     Pursuant to Florida Statute § 772.11, any such violation is subject to treble damages.

62.     The required statutory notice was properly delivered to Blinster providing her with the opportunity to cure this violation within 30 days thereafter.

63.     Defendants did not make any payments that would constitute such cure.

64.     As a direct and proximate cause of Blinster's conduct, Plaintiff Rapid Realty has suffered damages.

WHEREFORE, Plaintiff demands judgment against Victoria Blinster for damages in excess of $15,000, for statutory damages, including treble damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT IV
## CONVERSION AGAINST MARK BRATKOVSKY

65.     RRI hereby realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

66.     The specifically identified funds and other assets identified above belong to RRI, and have been wrongfully and unlawfully converted by Blinster, with the collusion and informed participation of Bratkovsky, and any person, firm, corporation or entity acting on their behalf of

11

(and/or in concert with Defendants), and without the knowledge, permission or authorization of RRI.

67.     The wrongful acts of Blinster, with the collusion and informed participation of Bratkovsky, constitutes an act of dominion wrongfully asserted over and inconsistent with the true and lawful interests and rights of RRI over the identified funds and personal property described above, and is a detriment to RRI's rightful ownership rights.

68.     Bratkovsky is or was unlawfully in possession and or control of all or some portion of the identified funds and has converted them for his own use and benefit to the exclusion and detriment of RRI.

69.     Bratkovsky's actions were willful, malicious, and designed to harm RRI.

70.     As a direct and proximate result thereof, RRI incurred substantial damages, which are continuing in nature.

WHEREFORE, Plaintiff demands judgment against Mark Bratkovsky for damages in excess of $15,000, pre-judgment interest and recoverable costs, and for such other relief as the Court deems just and proper.

## COUNT V
## CIVIL THEFT AGAINST MARK BRATKOVSKY

71.     RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

72.     As described with more particularity above, Bratkovsky, through Realty R Us, has stolen RRI funds and property in violation of Florida Statute § 812.02.

73.     Pursuant to Florida Statute § 772.11, any such violation is subject to treble damages.

12

74.     The required statutory notice was properly delivered to Bratkovsky, and he was provided with an opportunity to cure this violation within 30 days thereafter.

75.     Bratkovsky did not make any payments that would constitute such cure.

76.     As a direct and proximate cause of Bratkovsky's actions, Plaintiff Rapid Realty has suffered damages.

WHEREFORE, Plaintiff demands judgment against Mark Bratkovsky for damages in excess of $15,000, jointly and severally with Defendants Blinster and Blinster Realty, for statutory damages, inclusive of a trebling of damages, plus attorneys' fees and recoverable costs, and for such other relief as the Court deems just and proper.

## COUNT VI
## CONVERSION AGAINST CHMORGOUNOVA

77.     RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

78.     As described with more particularity above, Chmorgounova – when she knew or should have known that funds were taken from RRI – took $120,000 belonging to RRI.

79.     Chmorgounova had no legal right to the $120,000 in cash.

80.     Chmorgounova also knew that these monies were taken from a bank account in the name of RRI.

81.     Chmorgounova has never returned such monies to RRI.

82.     Plaintiff suffered damages as a direct result.

WHEREFORE, Plaintiff demands judgment against Defendant Inna Chmorgounova for damages in excess of $15,000, pre-judgment interest and recoverable costs, and for such other relief as the Court deems just and proper.

13

**COUNT VII**
**RESCISSION OF DECEMBER 31ˢᵗ REFERRAL AGREEMENT**

83.     RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

84.     RRI and Realty R Us entered into the December 31ˢᵗ Referral Agreement. See Exhibit "2".

85.     The December 31ˢᵗ Referral Agreement identifies Victoria Pansky (n/k/a Blinster) and RRI as "Broker A" and Mark Bratkovsky and Realty R Us as "Broker B."

86.     The "Prospect" in the referral agreement is listed as Arcus Properties II, LLC and Denis and Olga Rogachev.

87.     The terms of the December 31ˢᵗ Referral Agreement provide that Broker B – in consideration for the referral of the Prospect – shall compensate Broker A 100% of the full commission received by Broker B on any real estate transaction involving the Prospect as a referral fee. See Exhibit "2".

88.     The agreement also acknowledges that Victoria Pansky, RRI (Broker A) referred Arcus Properties II, LLC and Denis and Olga Rogachev to Bratkovsky, Realty R Us.

89.     Neither Bratkovsky nor Realty R Us were (nor are) licensed to sell real estate in Florida.

90.     This agreement violates Section 475.25(1)(h)2 of the Florida Statutes.

91.     As noted above, the agreement is a sham and nothing more than a "kickback" agreement and was entered into by Blinster and Bratkovsky with the intent to defraud RRI and deprive it of its share of the profits earned in this transaction.

92.     As shown above, Blinster confirmed the agreement through her email of January 3, 2013.

14

93. Through the use of this referral agreement, Realty R Us was able to obtain $725,000 in real estate commissions that should have been paid to RRI.

94. A demand for the return of these funds has been made to Realty R Us and these funds have not been returned.

95. RRI has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court to enter judgment rescinding the December 31st Referral Agreement, direct Realty R Us and/or Bratkovsky to return the $725,000 to RRI, and to enter such other relief as the Court deems just and proper.

## COUNT VIII
## RESCISSION OF JANUARY 24, 2013 REFERRAL AGREEMENT

96. RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

97. After the December 31st Referral Agreement, Bratkovsky and Blinster entered into the January 24 Referral Agreement, whereby Blinster (through her brokerage) and Bratkovsky (through his company) and a third person would share in the commissions from the three sales referenced herein. Samples of these agreements are attached as Composite Exhibit "4".

98. Neither Bratkovsky nor Realty R Us was ever licensed to sell real estate in Florida.

99. The December 31 Referral Agreement also violates Fla. Stat. § 475.25(1)(h)2.

100. The Agreement is a sham and nothing more than a "kickback" agreement entered into by Blinster and Bratkovsky with the intent to defraud RRI and deprive it of its share of the profits earned in the transactions.

101. Through the use of this Referral Agreement in furtherance of the scheme, Defendant were able to obtain $725,000 in real estate commissions that should have been paid to RRI.

15

102.    A demand for the return of these funds has been made to Realty R Us and these funds have not been returned.

103.    RRI has no adequate remedy at law.

WHEREFORE, Plaintiff requests this Court to enter a Judgment rescinding the January 24 Referral Agreement, directing Realty R Us to return the $725,000 to RRI, and to enter such other relief as the Court deems just and proper.

## COUNT IX
## CONSPIRACY TO COMMIT CONVERSION AGAINST 9701 LLC

104.    RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

105.    Defendant 9701 LLC is the real estate developer of The Residences.

106.    9701 LLC established an ongoing business relationship with RRI through Blinster, a licensed real estate broker, who was an agent of, and fiduciary to RRI.

107.    In light of her agency and fiduciary duties, any contracts, agreements, discussions, negotiations, offers, or prospects delivered; as well as any completed sales agreements, or agreements between the 9701 LLC and Blinster to pay a commission, were in essence made between 9701 LLC and *RRI* – not 9701 Collins and Blinster.

108.    Based on the facts set forth herein, in contracting in any way to pay a commission to Blinster, any such commission would be, by law, the property and once paid, the identified funds of RRI, the corporation with whom Blinster registered her state brokers' license. Blinster had no lawful right, as an individual, to such commissions.

109.    At first, 9701 LLC did contract with and pay commissions to RRI. However, thereafter, 9701 LLC paid the commissions not to RRI, but instead to Realty R Us, an out-of-state, unlicensed in Florida, brokerage company.

16

110.    9701 LLC had actual and/or constructive knowledge that Realty R Us was not a Florida licensed real estate broker and should not have received the commissions for the transactions listed above.

111.    9701 LLC had actual and/or constructive knowledge that Blinster was the agent for broker RRI and that commissions should have been paid to RRI.

112.    In addition, 9701 LLC had actual and/or constructive knowledge that Blinster, *as the broker of record of RRI,* brought the buyers to 9701 LLC and that Blinster, not Bratkovsky or Realty R Us and was involved continuously in negotiations with 9701 LLC, the buyers, and the title company, not Bratkovsky or Realty R Us, who were both out of state and not licensed in Florida. Thus, any commissions earned as a result of the sale of these properties were required to have been paid to RRI – not an out of state, broker with no Florida real estate brokerage license.

113.    9701 LLC employees or agents overseeing these transactions with due diligence, and acting in good faith, knew, or should have known, that wiring the funds to Bratkovsky's real estate company in New York would deprive RRI of its earned commissions.

114.    At all material times hereto, authorized representatives of 9701 LLC, specifically Sabine Otamendi and Pamela Pattie, had knowledge of the fraudulent scheme being committed by Blinster, Bratkovsky, and Realty R Us to defraud RRI of its commissions, yet nevertheless provided substantial assistance to Blinster, Bratkovsky, and Realty R Us to defraud RRI.

115.    Specifically, 9701 LLC knew, or should have known, that Blinster – on behalf of RRI and not Bratkovsky – was the broker who brought the buyers to 9701 LLC resulting in the sales of the three condominium units.

17

116.    9701 LLC blatantly disregarded the fact that neither Bratkovsky nor Realty R Us was a licensed real estate broker in Florida. Nevertheless, 9701 LLC made commission checks payable to Realty R Us in New York.

117.    On the three units, 9701 LLC paid $725,000 in commissions to Realty R Us instead of RRI.

118.    If it had acted in good faith, exercising due diligence, 9701 LLC would have paid these commissions to RRI, the corporate entity of which it, and its agents and employees knew, that Blinster was an agent and fiduciary for RRI.

119.    Either through willful or reckless actions, or by failing to act in good faith, or use due diligence, 9701 LLC substantially assisted Blinster, and helped her to facilitate the scheme to convert the commission owed to RRI.

120.    9701 LLC knew, or should have known, that it was aiding and abetting Blinster, Bratkovsky and/or Realty R Us to wrongfully exercise dominion or control over the money or property inconsistent with and adverse to the rights of RRI.

121.    9701 LLC conspired with the other Defendants to "accomplish an unlawful end or a lawful end by unlawful means" and pursuant to a common scheme – to successfully deprive RRI of entitled-to monies.

122.    As a result of 9701 LLC's actions, RRI has been damaged.

WHEREFORE, Plaintiff requests entry of judgment against 9701 LLC in an amount in excess of $15,000, plus pre-judgment interest, recoverable costs, and for such other relief as may be just and proper.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305.374.8200 | F 305.374.8208

## COUNT X
## BREACH OF CONTRACT AND ACTION
## FOR EARNED COMMISSION AGAINST 9701 LLC

123. RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

124. 9701 LLC is a real estate developer of the The Residences.

125. 9701 LLC entered into an oral agreement to pay commission at a specific rate to Blinster, a licensed Florida Real Estate broker, if she brought in and registered a "prospect," who would ultimately purchase real property from 9701 LLC.

126. As alleged in greater detail in this complaint, Blinster, a licensed real estate broker, was an agent of, and fiduciary to RRI.

127. According to the terms of the contract and her agency and fiduciary position, any contracts, agreements, discussions, negotiations, offers, or prospects delivered; as well as any completed sales agreements, or agreements between the 9701 LLC and Blinster to pay a commission, were in essence made between 9701 LLC and *RRI* – and not the 9701 LLC and Blinster.

128. Despite full performance by RRI, 9701 LLC failed to properly pay the commissions due to RRI either through its own neglect or intention.

129. 9701 LLC thus failed to act in good faith, or use due diligence, and materially breached its contract to pay the commission due to RRI.

130. As a result of 9701 LLC's breach, RRI has been substantially damaged.

WHEREFORE, Plaintiff demands judgment against 9701 LLC in an amount exceeding $15,000, plus pre-judgment interest, recoverable costs, and for such other relief as the Court deems just and proper.

19

## COUNT XI
## NEGLIGENCE AGAINST 9701 LLC

131.    RRI realleges and incorporates paragraphs 1 through 46 above, as if fully set forth herein.

132.    Defendant 9701 LLC is the real estate developer of The Residences.

133.    9701 LLC and RRI, through Blinster, had an ongoing business relationship, whereby RRI would procure ready, willing, and able buyers to purchase units at The Residences.

134.    9701 LLC had actual and/or constructive knowledge that Blinster was the broker of record for RRI.

135.    9701 LLC had actual and/or constructive knowledge that Blinster, as the broker of record of RRI, brought the buyers identified in Composite Exhibits 5 and 6 to 9701 LLC to purchase units at the Residences.

136.    9701 LLC had actual and/or constructive knowledge that Blinster – not Bratkovsky or Realty R Us – was the broker continuously involved in the negotiations with 9701 LLC, the buyers identified in Composite Exhibits 5 and 6, and the title company.

137.    9701 LLC had a duty to exercise due care in paying commission and to pay commissions earned as part of sales of units at The Residences to the person or entity that procured the buyers who closed on units, including, but not limited to commissions earned as a result of the sale of the units identified in Composite Exhibits 5 and 6, and any other unknown sales of units that Blinster brought to The Residences that were really clients or business opportunities of RRI.

138.    9701 LLC breached its duty by failing to pay RRI its earned commissions, instead paying the commissions to Realty R Us – a company not licensed to act as real estate broker in Florida – or to others for transactions which have not yet been discovered but which were business opportunities of RRI.

20

139.    Based on 9701 LLC's dealings with RRI, it knew or should have known that the commissions were owed to RRI and not a different entity or person.

140.    As a result of 9701 LLC's negligence, RRI has been damaged.

WHEREFORE, Plaintiff demands judgment against 9701 LLC in an amount exceeding $15,000, plus pre-judgment interest, and recoverable costs, and for such other relief as the Court deems just and proper.

DEVINE GOODMAN RASCO & WATTS-FITZGERALD, LLP
2800 PONCE DE LEON BOULEVARD | SUITE 1400 | CORAL GABLES, FLORIDA 33134 | P 305 374 8200 | F 305 374 8208

## JURY DEMAND

Consistent with Article I, Section 22 of the Florida Constitution and the Seventh Amendment of the United States Constitution, Plaintiff RRI demands trial by jury on all counts above so triable.

Dated this 15th day of June, 2015.

Respectfully submitted,

**DEVINE GOODMAN RASCO &
WATTS-FITZGERALD, LLP**
2800 Ponce de Leon Boulevard, Suite 1400
Coral Gables, FL 33134
Telephone:  (305) 374-8200
Facsimile:  (305) 374-8208
Email: lgoodman@devinegoodman.com

By: _____
        Lawrence D. Goodman, Esq. (F.B.N. 712647)

        - AND -

**THE COCHRAN FIRM-SOUTH FLORIDA**
657 South Drive, Suite 304
Miami Springs, FL 33166
Telephone:    (305) 567-1200
Facsimile:    (305) 856-7747
Email: swleeds@cochranfirm.com

By:  /s/ Scott W. Leeds
        Scott W. Leeds, Esq. (F.B.N. 372552)

**ATTORNEYS FOR PLAINTIFF RRI**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the ePortal

system this 15th day of June, 2015 to all counsel or parties of record on the attached service list.

By: _____
Lawrence D. Goodman, Esq.

## SERVICE LIST

Kathleen S. Phang, Esq.
**Berger Singerman**
1450 Brickell Avenue
Suite 1900
Miami, FL 33130
Email: kphang@bergersingerman.com

*Counsel for Defendants Mark Bratkovsky, Realty US, Victoria Blinster Real Estate Group, LLC Victoria Pansky a/k/a Victoria Blinster and Inna Chmorgounova*

Jason R. Block, Esq.
**Rennert Vogel Mandler & Rodriguez, P.A.**
Miami Tower
Suite 2900
100 E. Second Street
Miami, FL 33131
Email: jblock@rvmrlaw.com
Email: djuarez@rvmrlaw.com
Email: servicejasonblock@rvmrlaw.com

*Counsel for Defendant 9701 Collins Avenue, LLC*

23

# Exhibit "1"

| Greenberg Traurig, P.A.<br>333 Avenue of the Americas<br>Miami, FL 33131 | A. | **Settlement Statement**<br>U.S. Department of Housing<br>and Urban Development<br>OMB Approval No. 2502-0265 |
|---|---|---|

**B. Type of Loan**

1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv. Unins.  4. ☐ VA  5. ☐ Conv. Ins.

| 6. File Number<br>119930.032303 | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME OF BORROWER:** Galina Beglova

**ADDRESS OF BORROWER:**

**E. NAME OF SELLER:** 9701 COLLINS AVENUE, LLC, a Delaware limited liability company

**ADDRESS OF SELLER:** 9002 San Marco Court, Orlando, Florida 32819

**F. NAME OF LENDER:**

**ADDRESS OF LENDER:**

**G. PROPERTY LOCATION:** 9701 Collins Avenue, Unit 2303-S
Bal Harbour, Florida 33154

**H. SETTLEMENT AGENT:** Greenberg Traurig, P.A.
333 Avenue of the Americas, Miami, FL 33131   (305) 579-0500

**PLACE OF SETTLEMENT:** 333 Avenue of the Americas, Miami, FL 33131

**I. SETTLEMENT DATE:** 11/30/2012

| **J. SUMMARY OF BORROWER'S TRANSACTION** | | **K. SUMMARY OF SELLER'S TRANSACTION** | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 6,950,000.00 | 401. Contract sales price | 6,950,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 12,293.53 | 403. | |
| 104. 1.70% Development Fee | 118,150.00 | 404. 1.70% Development Fee | 118,150.00 |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes   to | | 406. City/town taxes   to | |
| 107. County taxes   11/30/2012 to 12/31/2012 | 6,382.25 | 407. County taxes   11/30/2012 to 12/31/2012 | 6,382.25 |
| 108. Assessments   to | | 408. Assessments   to | |
| 109.   to | | 409.   to | |
| 110.   to | | 410.   to | |
| 111.   to | | 411.   to | |
| 112.   to | | 412.   to | |
| **120. GROSS AMOUNT DUE FROM BORROWER** ▶ | 7,086,825.78 | **420. GROSS AMOUNT DUE TO SELLER** ▶ | 7,074,532.25 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 6,950,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 408,743.50 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. Principal amount of seller financing | | 506. Principal amount of seller financing | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| 209a. | | 509a. | |
| 209b. | | 509b. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes   to | | 510. City/town taxes   to | |
| 211. County taxes   to | | 511. County taxes   to | |
| 212. Assessments   to | | 512. Assessments   to | |
| 213.   to | | 513.   to | |
| 214.   to | | 514.   to | |
| 215.   to | | 515.   to | |
| 216.   to | | 516.   to | |
| 217.   to | | 517.   to | |
| 218.   to | | 518.   to | |
| 219.   to | | 519.   to | |
| **220. TOTAL AMOUNTS PAID BY OR IN BEHALF OF BORROWER** ▶ | 6,950,000.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER** ▶ | 408,743.50 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 7,086,825.78 | 601. Gross amount due to seller (line 420) | 7,074,532.25 |
| 302. Less amounts paid by/for borrower (line 220) | 6,950,000.00 | 602. Less reductions in amount due seller (line 520) | 408,743.50 |
| 303. CASH ☒ From ☐ To  **BORROWER** ▶ | 136,825.78 | 603. CASH ☒ To ☐ From  **SELLER** ▶ | 6,665,788.75 |

SUBSTITUTE FORM 1099 SELLER STATEMENT. The information contained in Blocks E, G, H and I on line 401 (or, if line 401 is not present, line 403) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119 for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide (see box E) with your correct taxpayer identification number. If you do not provide (see box E) with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and (under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

PAGE 2

| | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|
| 700. | **TOTAL SALES/BROKER'S COM.** based on price | $ 5,950,000.00 @ | % = | |
| | Division of Commission (line 700) as follows: | | | |
| 701. | 347,500.00 | to Rapid Realty | | |
| 702. | | to | | |
| 703. | Commission paid at Settlement | | | 347,500.00 |
| 704. | | | | |
| 800. | **Items Payable in Connection With Loan** | | | |
| 801. | Loan Origination Fee % | to | | |
| 802. | Loan Discount % | to | | |
| 803. | Appraisal Fee | to | | |
| 804. | Credit Report | to | | |
| 805. | Lender's Inspection Fee | to | | |
| 806. | Mortgage Insurance Application Fee | to | | |
| 807. | | to | | |
| 808. | | to | | |
| 809. | | to | | |
| 810. | | to | | |
| 811. | | to | | |
| 812. | | to | | |
| 813. | | to | | |
| 814. | | to | | |
| 900. | **Items Required By Lender To Be Paid In Advance** | | | |
| 901. | Interest from 11/30/2012 to 12/1/2012 @ $ /day | | | |
| 902. | Mortgage Insurance Premium for months to | | | |
| 903. | Hazard Insurance Premium for years to | | | |
| | years to | | | |
| | years to | | | |
| 1000. | **Reserves Deposited With Lender** | | | |
| 1001. | Hazard Insurance months @ $ per month | | | |
| 1002. | Mortgage Insurance months @ $ per month | | | |
| 1003. | City property taxes months @ $ per month | | | |
| 1004. | County property taxes months @ $ per month | | | |
| 1005. | Annual assessments months @ $ per month | | | |
| 1006. | months @ $ per month | | | |
| 1007. | months @ $ per month | | | |
| 1008. | Aggregate Adjustment | $0.00 | | |
| 1100. | **Title Charges** | | | |
| 1101. | Settlement or closing fee | to | | |
| 1102. | Abstract or title search | to | | |
| 1103. | Title examination | to | | |
| 1104. | Title insurance binder | to | | |
| 1105. | Document preparation | to | | |
| 1106. | Notary fees | to | | |
| 1107. | Attorney's fees | to | | |
| | (includes above items numbers: ) | | | |
| 1108. | Title insurance | to Greenberg Traurig, P.A. | | |
| | (includes above items numbers: ) | | | |
| 1109. | Lender's coverage - Risk Premium | INS AMT: | | |
| 1110. | Owner's coverage - Risk Premium 19,462.50 | INS AMT: 5,950,000.00 | | |
| 1111. | | to | | |
| 1112. | | to | | |
| 1113. | Courier cost/wire/intermediary long distance, misc | to Greenberg Traurig, P.A. | | 100.00 |
| 1200. | **Government Recording and Transfer Charges** | | | |
| 1201. | Recording Fees: Deed $18.50 ; Mortgage(s) $ ; Releases $18.50 | | | $1.00 |
| 1202. | City/county tax/stamps: Deed $ ; Mortgage(s) $ | | | |
| 1203. | State tax/stamps: Deed $41,700.00 ; Mortgage(s) $ | | | 41,700.00 |
| 1204. | | | | |
| 1205. | | | | |
| 1300. | **Additional Settlement Charges** | | | |
| 1301. | Hook-up Fee | to Florida Power & Light Company | | |
| 1302. | Inspection Fee | to Rapid Realty &/or CPM Home Inspection Serv | | |
| 1303. | | to | | |
| 1304. | | to | | |
| 1305. | | to | | |
| 1306. | | to | | |
| 1307. | | to | | |
| 1308. | | to See Attached (Addendum) | | |
| 1400. | **Total Settlement Charges** (enter on lines 103, Section J and 502, Section K) | | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____, Blagoeva    Borrower
Galina Bogleva

By:    Seller
Attorney-in-fact

_____    Borrower        Seller

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Greenberg Traurig, P.A.        11/30/2012    Date
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# HUD-1 ADDENDUM

**BUYER:**
Galina Beglova

**SETTLEMENT DATE:** 11/30/12

**SELLER:**
9701 COLLINS AVENUE, LLC, a Delaware limited liability company

**FILE NUMBER:** 119930.032303

**PROPERTY ADDRESS:**

9701 Collins Avenue, Unit 2303-S
Bal Harbour, Florida 33154

## ITEMIZATION OF HUD LINE 1310

This addendum is attached to a HUD-1 Settlement Statement executed by the aforementioned parties,
and is attached to said HUD-1 Statement for the purpose of itemizing expenses on Line 1310 of Page 2 thereof as:

|  | | Buyer | | Seller |
|---|---|---|---|---|
| Additional Expenses | $ | 11,693.53 | $ | .00 |

## SCHEDULE OF DISBURSEMENTS

| DESCRIPTION | PAYEE | BUYER | SELLER |
|---|---|---|---|
| Initial ContributionCondo Assoc$11.39pm | Bal Harbour North South Condo.Asso, Inc. | $ 22.78 | |
| Condo Maint. 11/30/12-11/30/12 | Bal Harbour North South Condo.Asso, Inc. | $ .38 | |
| Condo Maint. 12/1/12 - 12/31/12 | Bal Harbour North South Condo.Asso, Inc. | $ 11.39 | |
| InitContHotelUnitSharedCost$3,076.25pm | Bal Harbour Hotel, LLC | $ 6,152.50 | |
| HotelUnitSharedCosts 11/30/12-11/30/12 | Bal Harbour Hotel, LLC | $ 102.54 | |
| HotelUnitSharedCosts 12/1/12 -12/31/12 | Bal Harbour Hotel, LLC | $ 3,076.25 | |
| Initial ContributionMasterAssoc$5.65pm | Bal Harbour Resort Master Assoc., Inc. | $ 11.30 | |
| Master Maint. 11/30/12-11/30/12 | Bal Harbour Resort Master Assoc., Inc. | $ .19 | |
| Master Maint. 12/1/12 -12/31/12 | Bal Harbour Resort Master Assoc., Inc. | $ 5.65 | |
| InitCondHotelSharedLotOwnerCost$761.72pm | Bal Harbour Hotel LLC | $ 1,523.44 | |
| HotelSharedLotOwnerCost11/30/12-11/30/12 | Bal Harbour Hotel LLC | $ 25.39 | |
| HotelSharedLot OwnerCost12/1/12-12/31/12 | Bal Harbour Hotel LLC | $ 761.72 | |
| **TOTAL HUD LINE 1310 EXPENSES:** | | **$ 11,693.53** | **$ .00** |

GT03/13/13PP1-0013

**GREENBERG TRAURIG**
TRUST ACCOUNT
333 Avenue of the Americas
Suite 4400
Miami, FL 33131

No. 038607

63-964
670

PAY   Three hundred forty-seven thousand five hundred and 00/100********

NOT NEGOTIABLE AFTER 90 DAYS FROM ISSUE

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 12/05/12 | 38607 | $***347,500.00*** |

TO THE
ORDER
OF        **Rapid Realty**

TWO SIGNATURES REQUIRED FOR AMOUNTS OVER $10,000.00

GREENBERG TRAURIG
TRUST ACCOUNT

Sabadell United Bank, N.A.

---

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|

Check #:   38607                 Vendor ID:              Check Date:  Dec 05/12

| Trust Number | Client | Matter | Payee | Amount |
|--------------|--------|--------|-------|--------|
| 15 | 119930 | 032303 | Rapid Realty | 347,500.00 |
| | | | SABADELL UNITED - CK#38607 | |
| | | | Rapid Realty | |
| | | | 119930.032303 GAS/ds re commission Unit# 2303-S | |



PLEASE DETACH BEFORE DEPOSITING

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|

# Exhibit "2"

 

Date _____ December 31st, 2012

_____ Victoria Pensky, Rapid Realty _____ (BROKER A)
       BROKER          /          Brokerage Company

refers _____ Arcus Properties II, LLC, and Denis and Olga Rogachev _____ (Prospect)
                          Name of Prospect

. to _____ Mark Bratkovsky, Realty r Us _____ (BROKER B)
       BROKER          /          Brokerage Company

In consideration of the referral of Prospect, BROKER B shall compensate BROKER A, in the amount of (Complete One):

☐    $ _____

☐    _____ % of the gross purchase price of any property
     purchased, sold, or optioned by Prospect

☑    _____ 100 _____ % of the full commission received by Broker B
     on any real estate transaction involving Prospect

☐    _____ % of the listing commission received by Broker B
     on any real estate transaction involving Prospect

☐    _____ % of the selling commission received by Broker B
     on any real estate transaction involving Prospect

☐    other _____

as a referral fee, in the event that BROKER B is compensated in connection with any real estate related contract or
transaction involving Prospect.

_____ Rapid Realty _____                    _____ Realty r Us _____
     Brokerage Company                           Brokerage Company

BROKER     /     Date 12/31/12          BROKER     /     Date 1/3/13

RA-2   Rev. 10/08   © 2006   Florida Association of REALTORS®   All Rights Reserved



# Exhibit "3"

Gmail - referral agreement



Vic B <vic33180@gmail.com>

## referral agreement
1 message

Vic B <vic33180@gmail.com>                                          Thu, Jan 3, 2013 at 9:35 AM
To: Law Office of Mark Brotkovsky <mblawny@gmail.com>

Hi Mark,
We may need this for our records.
We'll figure out 60K, if there's a way not to show it on the books...

Thanks,
Vic

Img004.jpg
445K

# Exhibit "4"

Date _____ **January 24, 2013**

_____Victoria Pansky_____ _____Victory Luxury Properties_____ (BROKER A)
BROKER                    /                    Brokerage Company

refers _____Arcus Properties II, LLC_____ (Prospect)
Name of Prospect

to _____M. Bratkovsky_____ _____Realty R US_____ (BROKER B)
BROKER                    /                    Brokerage Company

In consideration of the referral of Prospect, BROKER B shall compensate BROKER A, in the amount of (Complete One):

☐ $ _____

☐ _____ % of the gross purchase price of any property
purchased, sold, or optioned by Prospect

☒ _____20__ % of the full commission received by Broker B
on any real estate transaction involving Prospect

☐ _____ % of the listing commission received by Broker B
on any real estate transaction involving Prospect

☐ _____ % of the selling commission received by Broker B
on any real estate transaction involving Prospect

☐ other _____

as a referral fee, in the event that BROKER B is compensated in connection with any real estate related contract or
transaction involving Prospect.

_____Victory Luxury Properties_____            _____REALTY R US_____
Brokerage Company                              Brokerage Company

_____                      _____ 1/24/13
BROKER            /       Date                 BROKER         /    Date

BA-2   Rev. 10/06   © 2006   Florida Association of Realtors®   All Rights Reserved
formsimplicity



Date _____ January 24, 2013

Victoria Pansky  Victory Luxury Properties _____ (BROKER A)
BROKER    /  Brokerage Company

refers _____ Denis & Olga Rogachev _____ (Prospect)
       Name of Prospect

to _____ M. Bratkovsky _____ Realty R US _____ (BROKER B)
  BROKER    /  Brokerage Company

In consideration of the referral of Prospect, BROKER B shall compensate BROKER A, in the amount of (Complete One):

☐ $_____

☐ _____ % of the gross purchase price of any property
purchased, sold, or optioned by Prospect

☒ _____ 20 % of the full commission received by Broker B
on any real estate transaction involving Prospect

☐ _____ % of the listing commission received by Broker B
on any real estate transaction involving Prospect

☐ _____ % of the selling commission received by Broker B
on any real estate transaction involving Prospect

☐ other _____

as a referral fee, in the event that BROKER B is compensated in connection with any real estate related contract or
transaction involving Prospect.

Victory Luxury Properties    REALTY R US
Brokerage Company      Brokerage Company

_____ _____ 1/29/17
BROKER  /  Date    BROKER  /  Date

RA-2   Rev. 10/06   © 2006   Florida Association of Realtors®   All Rights Reserved
formsimplicity

Exhibit "5"

Effective January 1, 2012

0740

JAN 2 PM12:54



ST·REGIS

## THE RESIDENCES AT THE ST. REGIS BAL HARBOUR RESORT
## BROKER REGISTRATION

Date: 1/2/2013    Client's Name: Streltsava, Nadezda & Gibbot(?) Valery
(Last) (First)

Client Address: 10295 Collins Ave

City: Bal Harbour   State: Fl   Zip Code: 33154   Phone: _____

Broker Company: Realty DVS

Broker's Name: Mark Aratkosky

Broker's Address: 2652 Coney Island Ave

City: Brooklyn   State: NY   Zip Code: 11223

Broker's Phone # 917-668-9659   Broker's Federal I.D. #: _____

Broker's Agent Name: Mark Aratkosky

Agent's Florida License # _____   Agent's Cell #: _____

By signing below, the undersigned acknowledges having been introduced to The Residences at The St. Regis Bal Harbour Resort by the Broker/Broker's Agent named above.

Client's Signature: M Steltsovr   Date: 1/2/13

By signing below, the undersigned Broker or Broker's Agent acknowledges that the Florida Real Estate Broker Company named above is not entitled to a commission in connection with the sale of a residence located at The Residences at The St. Regis Bal Harbour Resort to the Client named above unless this Broker Registration & Commission Agreement ("Agreement") has been executed by an authorized representative of The Residences at The St. Regis Bal Harbour Resort as agent for the Developer and by the Client. The undersigned Broker further acknowledges that this Agreement shall be subject to all the Terms and Conditions set forth on the front and back of this Agreement.

Broker or Broker's Agent Signature: _____   Date: 1/3/13

The undersigned authorized signatory for 9701 Collins, LLC, acknowledges the registration of the above named Client by the Broker named above subject to the Terms and Conditions set forth on the front and back of this Agreement

Signature: _____   Date: _____

Effective January 1, 2012

0741

JAN 2 PM 12:54



ST REGIS

# THE RESIDENCES AT THE ST. REGIS BAL HARBOUR RESORT
## BROKER REGISTRATION

Date: 12/10/13    Client's Name: Rogacheva Olga & Rogachev Denel

Client Address: Novocheremushkinskaya str 49 apt 478

City: Moscow    State: ____    Zip Code: 117 918    Phone: +7985 2294111

Broker Company: Realty RUS

Broker's Name: Mark Bratkovsky

Broker's Address: 1652 Coney Island Ave

City: Brooklyn    State: NY    Zip Code: 11223

Brokers Phone # 917 669 8650    Brokers Federal I.D. #: ____

Broker's Agent Name: Mark Bratkovsky

Agent's Florida License # ____    Agent's Cell #: ____

By signing below, the undersigned acknowledges having been introduced to The Residences at The St. Regis Bal Harbour Resort by the Broker/Broker's Agent named above.

Client's Signature: ____    Date: 1/2/13

By signing below, the undersigned Broker or Broker's Agent acknowledges that the Florida Real Estate Broker Company named above is not entitled to a commission in connection with the sale of a residence located at The Residences at The St. Regis Bal Harbour Resort to the Client named above unless this Broker Registration & Commission Agreement ("Agreement") has been executed by an authorized representative of The Residences at The St. Regis Bal Harbour Resort as agent for the Developer and by the Client. The undersigned Broker further acknowledges that this Agreement shall be subject to all the Terms and Conditions set forth on the front and back of this Agreement.

Broker or Broker's Agent Signature: ____    Date: 1/3/13

The undersigned authorized signatory for 9701 Collins, LLC, acknowledges the registration of the above named Client by the Broker named above subject to the Terms and Conditions set forth on the front and back of this Agreement

Signature: ____    Date: ____

# Exhibit "6"

| MFD-1 | U.S. Department of Housing and Urban Development | OMB No. 2502-0265 |
|---|---|---|

**A. Settlement Statement**

**B. Type of Loan**

| ○ 1. FHA | ○ 2. FmHA | ○ 3. Conv. Unins. | 6. File Number 1301-910417 | 7. Loan Number IDt | 8. Mortg. Ins. Case Num. |
|---|---|---|---|---|---|
| ○ 4. VA | ○ 5. Conv. Ins. | | | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown here. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| **D. NAME OF BORROWER:** | Avrus Properties III, LLC, a Florida limited liability company | |
|---|---|---|
| Address of Borrower: | 194 Hoyt Street, Brooklyn, New York 11217 | |
| **E. NAME OF SELLER:** | 8707 Collins Avenue, LLC, a Delaware limited liability company | |
| Address of Seller: | 9002 Bau Mateo Court, Orlando, Florida 32819 | TIN: |
| **F. NAME OF LENDER:** | | |
| Address of Lender: | | |
| **G. PROPERTY LOCATION:** | 8701 Collins Avenue, Unit 3100-S, Bal Harbour, Florida 33154 | |
| **H. SETTLEMENT AGENT:** | Harbor Title, Inc. | TPC 27-3903157 |
| Place of Settlement: | 1000 Sawbom Drive, Suite 600, Fort Lauderdale, Florida 33004 | Phone: 954-985-4311 |
| **I. SETTLEMENT DATE:** | 2/1/13 | DISBURSEMENT DATE: 2/1/13 |

| | | | | |
|---|---|---|---|---|
| **J. Summary of Borrower's Transaction** | | | | |
| 101. Contract sales price | | 8,900,000.00 | 401. Contract sales price | 8,900,000.00 |
| 102. Personal property | | | 402. Personal property | |
| 103. Settlement charges to borrower (Line 1400) | | 20,728.05 | 403. | |
| 104. 1.75% Development Fee | | 102,000.00 | 404. 1.75% Development Fee | 102,000.00 |
| 105. | | | 405. | |
| | | | 406. City/town taxes | |
| 106. City/town taxes | | | 407. County taxes | |
| 107. County taxes | | | 408. Assessments | |
| 108. Assessments | | | 409. | |
| 109. | | | 410. | |
| 110. | | | 411. | |
| 111. | | | 412. | |
| 112. | | | | |
| **120. Gross amount due from borrower** | | 9,172,768.05 | **420. Gross amount due to seller** | 9,102,000.00 |
| **200. Amounts paid by or in behalf of borrower** | | | **500. Reductions in amount due to seller** | |
| 201. Deposit or earnest money | | 1,000,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | | 502. Settlement charges to seller (line 1400) | 304,800.00 |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | |
| 204. Principal amount of second mortgage | | | 504. Payoff of first mortgage loan | |
| 205. | | | 505. Payoff of second mortgage loan | |
| 206. | | | 506. Deposits held by seller | |
| 207. Principal amt of mortgage held by seller | | | 507. Principal amt of mortgage held by seller | |
| 208. Credit for recording and doc stamps SWD | | 36,816.00 | 508. Credit for recording and doc stamps SWD | 36,816.00 |
| 209. Credit for County & Title Premium | | 17,335.00 | 509. Credit for County's Title Premium | 17,335.00 |
| 210. City/town taxes | | | 510. City/town taxes | |
| 211. County taxes from 01/01/13 to 01/31/13 | | 6,877.00 | 511. County taxes from 01/01/13 to 06/31/13 | 6,877.00 |
| 212. Assessments | | | 512. Assessments | |
| 213. | | | 513. | |
| 214. | | | 514. | |
| 215. | | | 515. | |
| 216. | | | 516. | |
| 217. | | | 517. | |
| 218. | | | 518. | |
| 219. | | | 519. | |
| **220. Total paid by/for borrower** | | 1,988,427.10 | **520. Total reductions in amount due seller** | 365,491.10 |
| **300. Cash at settlement from/to borrower** | | | **600. Cash at settlement to/from seller** | |
| 301. Gross amount due from borrower (line 120) | | 9,172,768.05 | 601. Gross amount due to seller (line 420) | 9,102,000.00 |
| 302. Less amount paid by/for the borrower (line 220) | | (1,988,491.10) | 602. Less total reductions in amount due seller (line 520) | (365,491.10) |
| **303. Cash** ☑ From ☐ To Borrower | | 4,313,306.94 | **603. Cash** ☑ To ☐ From Seller | 8,736,678.90 |

Substitute Form 1099 Seller Statement:    The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

Seller Instructions:    If the real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

Borrower's Initials: _____    Seller's Initials: _____

DoubleTime®

HUD-1                                    U.S. Department of Housing and Urban Development                                    Page 2

| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker Comm. based on price $4,000,000.00 @ % = 300,000.00 | | | |
| 701. $300,000.00 % to Realty R Us | | | |
| 702. % to | | | |
| 703. Commission paid at settlement | | | 300,000.00 |
| 704. | | | |
| **800. Items Payable in Connection with Loan** | | | |
| 801. Loan origination fee % to | | | |
| 802. Loan discount % to | | | |
| 803. Appraisal fee to | | | |
| 804. Credit report to | | | |
| 805. Lender's inspection fee to | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption Fee to | | | |
| 808. to | | | |
| 809. to | | | |
| 810. to | | | |
| 811. to | | | |
| **900. Items Required by Lender to be Paid in Advance** | | | |
| 901. Interest from to @ /day | | | |
| 902. Mortgage insurance premium for months to | | | |
| 903. Hazard insurance premium for years to | | | |
| 904. Flood insurance premium for years to | | | |
| 905. years to | | | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Hazard insurance months @ per month | | | |
| 1002. Mortgage insurance months @ per month | | | |
| 1003. City property taxes months @ per month | | | |
| 1004. County property taxes months @ per month | | | |
| 1005. Annual assessments months @ per month | | | |
| 1006. Flood insurance months @ per month | | | |
| 1007. months @ per month | | | |
| 1008. months @ per month | | | |
| 1009. Aggregate accounting adjustment | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to Harbor Title, Inc. | | 125.00 | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's Fees to Goldman & Ross, P.A./ Greenberg Traurig P.A. | | 1,000.00 | 4,000.00 |
|   (includes above item numbers: ) | | | |
| 1108. Title insurance to WFG National Title Insurance Company of Harbor Title, Inc. | | 17,328.00 | |
|   (includes above item numbers: ) | | | |
| 1109. Lender's coverage (Premium) | | | |
| 1110. Owner's coverage (Premium) $4,000,000.00 ($17,328.00) | | | |
| 1111. Release | | | |
| 1112. Courier, Copies, faxes, long distance to Greenberg Traurig, P.A. | | 106.00 | |
| 1113. to | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording fees Deed 210.00 Mortgage(s) Releases | | 19.50 | |
| 1202. City/county tax/stamps Deed Mortgage(s) | | | |
| 1203. State tax/stamps Deed 834,000.00 Mortgage(s) | | 30,000.00 | |
| 1204. E-recording Fee to Harbor Title, Inc. E-Recording | | 4.00 | |
| 1205. to | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Tax & Lien Search to One-Stop Lien Search, LLC | | 185.00 | |
| 1302. Hook up Fee to Florida Power & Light Company | | 200.00 | |
| 1303. HOA Contribution/Contribution $71.29/mo to Bal Harbour North South Condo Assn Inc. | | 22.72 | |
| 1304. Condo Estpl 03/01/13-03/31/13 to Bal Harbour North South Condo Assn Inc. | | 71.50 | |
| 1305. Condo Maint 03/01/13-03/31/13 to Bal Harbour North South Condo Assn Inc. | | 71.28 | |
| 1306. InitContribution/InitSince/Cont 03/01/13 p.r. to Bal Harbour Hotel, LLC | | 4,155.55 | |
| 1307. HotelAssMaint/Cont 03/01/13-03/09/13 to Bal Harbour Hotel, LLC | | 3,079.16 | |
| 1308. HotelAssMaint/Cont 03/01/13-03/01/13 to Bal Harbour Hotel, LLC | | 3,079.15 | |
| 1309. Additional expense (See Attached Addendum) | | 3,165.44 | |
| (Enter on lines 103, Section J and 502, Section K) | | 24,715.04 | 334,000.00 |



# HUD-1 SETTLEMENT STATEMENT
## ADDENDUM

| | |
|---|---|
| **FILE NUMBER:** | 1301-01017 |
| **NAME OF BORROWER:** | Arena Properties III, LLC, a Florida limited liability company |
| **Address of Borrower:** | 104 Hoyt Street, Brooklyn, New York 11217 |
| **NAME OF SELLER:** | 9701 Collins Avenue, LLC, a Delaware limited liability company |
| **Address of Seller:** | 9002 San Marco Court, Orlando, Florida 32819 |
| **NAME OF LENDER:** | |
| **Address of Lender:** | |
| **PROPERTY LOCATION:** | 9701 Collins Avenue, Unit 2103-S, Bal Harbour, Florida 33154 |
| **SETTLEMENT AGENT:** | Harbor Title, Inc. |
| **Place of Settlement:** | 1600 Sunshade Drive, Suite 500 , Fort Lauderdale, Florida 33304 |
| **SETTLEMENT DATE:** | 2/1/13     **DISBURSEMENT DATE:    2/1/13** |

### Itemization of Additional HUD Line Items

| Description | Payee | Borrower POC | Seller POC | Borrower | Seller |
|---|---|---|---|---|---|
| Initial Contribution Masterplan Stubligen | Bal Harbour Resort Master Association, Inc. | | | 71.20 | |
| Master Mnkt 02/01/13-02/28/13 | Bal Harbour Resort Master Association, Inc. | | | 4.85 | |
| Master Mnkt 03/01/13-03/31/13 | Bal Harbour Resort Master Association, Inc. | | | 5.65 | |
| lotCondShared.lotOwnerCost 9701.73 pro | Bal Harbour Hotel, LLC | | | 1021.44 | |
| HotelShared/LotOwnerCosts 02/01/13-02/28/1 | Bal Harbour Hotel, LLC | | | 791.72 | |
| HotelShared/LotOwnerCosts 03/01/13-03/31/1 | Bal Harbour Hotel, LLC | | | 791.72 | |
| Reimbursement of Costs for Corporate Filings | Goldman & Ross, P.A. | | | 130.00 | |
| | | | | | |
| | **Total HUD Line 1300 Expenses:** | 0.00 | 0.00 | 3,130.48 | 0.00 |

*This addendum is attached to a HUD-1 Settlement Statement executed by the aforementioned parties and is attached to said HUD Statement for the purpose of itemizing expenses reflected on line 1300 of page 2 thereof.*

Borrower's Initial(s):     Seller's Initial(s):

DoubleTime9

# HUD-1 SETTLEMENT STATEMENT ADDENDUM

**File Number:**    1301-009HT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

## Borrower(s)

Arous Properties III, LLC
a Florida limited liability company

By:   Ryard Holdings Limited
      its Managing Member

    By:

        VALEDICTRIX G. VALSILIADES

    (Corporate Seal)

## Seller(s)

9701 Collins Avenue, LLC
a Delaware limited liability company

By:   _____ , attorney
      Barbara A. Overton            in fact.
      Vice President

    (Corporate Seal)

## Settlement Agent

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Harbor Title, Inc.

By: _____        Date: _____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1018.

DoubleTime®

GT03/13/13PP1-0004

No. 038827

GREENBERG TRAURIG
TRUST ACCOUNT
333 Avenue of the Americas
Suite 4400
Miami, FL 33131

83-954
670

NOT NEGOTIABLE AFTER 90 DAYS FROM ISSUE

PAY   Three hundred thousand and 00/100**************************************

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 02/04/13 | 38827 | $***300,000.00*** |

TO THE
ORDER
OF       Realty R Us

TWO SIGNATURES REQUIRED FOR AMOUNTS OVER $10,000.00

GREENBERG TRAURIG
TRUST ACCOUNT

Sabadell United Bank, N.A.

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|
| Check #:  38827 | Vendor ID | Check Date:  Feb 04/13 | |

| Trust Number | Client | Matter | Payee | | Amount |
|--------------|--------|--------|-------|--|--------|
| 15 | 119930 | 032103 | Realty R Us | | 300,000.00 |
| | | | SABADELL UNITED - CK#38827 | | |
| | | | Realty R Us | | |
| | | | 119930.032103 GAS/dv re commission Unit# 2103-S | | |

DETACH

PLEASE DETACH BEFORE DEPOSITING

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|

DETACH

GT03/13/13PP1-0005

# Exhibit "7"

HUD-1

A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

B. Type of Loan

☐ 1. FHA   ☐ 2. FmHA   ☐ 3. Conv. Unins.   ☐ 4. VA   ☐ 5. Conv. Ins.

6. File Number: 1301-00GH7

7. Loan Number:

8. Mortg. Ins. Case Num.

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER: Arcus Properties IV, LLC, a Florida limited liability company
Address of Borrower: 164 Hoyt Street, Brooklyn, New York 11217

E. NAME OF SELLER: 9701 Collins Avenue, LLC, a Delaware limited liability company
Address of Seller: 8002 San Marco Court, Orlando, Florida 30819

TIN:

F. NAME OF LENDER:
Address of Lender:

G. PROPERTY LOCATION: 9701 Collins Avenue, Unit 2104-3, Bal Harbour, Florida 33154

H. SETTLEMENT AGENT: Harbor Title, Inc.
Place of Settlement: 1000 Sawhnia Drive, Suite 500, Fort Lauderdale, Florida 33334

TIN: 27-2800157
Phone: 954-965-4711

I. SETTLEMENT DATE: 3/1/13

DISBURSEMENT DATE: 3/1/13

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| 100. Gross Amount Due From Borrower | | | 400. Gross Amount Due To Seller | | |
| 101. Contract sales price | | 4,135,000.00 | 401. Contract sales price | | 4,135,000.00 |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower (Line 1400) | | 83,843.86 | 403. | | |
| 104. 7.75% Development Fee | | 76,136.06 | 404. 7.75% Development Fee | | 76,136.06 |
| 105. | | | 405. | | |
| 106. City/town taxes | | | 406. City/town taxes | | |
| 107. County taxes | | | 407. County taxes | | |
| 108. Assessments | | | 408. Assessments | | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 120. Gross Amount Due From Borrower | | 4,147,967.86 | 420. Gross Amount Due To Seller | | 4,195,136.06 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | | 500. Reductions In Amount Due To Seller | | |
| 201. Deposit or earnest money | | 1,237,006.00 | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | | 502. Settlement charges to seller (line 1400) | | 218,250.00 |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. Principal amount of second mortgage | | | 504. Payoff of first mortgage loan | | |
| 205. | | | 505. Payoff of second mortgage loan | | |
| 206. | | | 506. Deposits held by seller | | |
| 207. Principal amt of mortgage held by seller | | | 507. Principal amt of mortgage held by seller | | |
| 208. Credit for recording and doc stamps SWD | | 34,766.50 | 508. Credit for recording and doc stamps SWD | | 34,766.50 |
| 209. Credit for Owner's Title Premium | | 12,957.50 | 509. Credit for Owner's Title Premium | | 12,957.50 |
| 210. City/town taxes | | | 510. City/town taxes | | |
| 211. County taxes from 01/01/13 to 03/01/13 | | 4,646.19 | 511. County taxes from 01/01/13 to 03/01/13 | | 4,646.19 |
| 212. Assessments | | | 512. Assessments | | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. Total Paid By/For Borrower | | 1,276,604.19 | 520. Total Reductions In Amount Due Seller | | 262,604.19 |
| 300. Cash At Settlement From/To Borrower | | | 600. Cash At Settlement To/From Seller | | |
| 301. Gross amount due from borrower (line 120) | | 4,147,967.86 | 601. Gross amount due to seller (line 420) | | 4,195,136.06 |
| 302. Less amount paid by/for the borrower (line 220) | | (1,276,604.19) | 602. Less total reductions in amount due seller (line 520) | | (262,604.19) |
| 303. Cash ☑ From ☐ To  Borrower | | 2,967,863.35 | 603. Cash ( ☑ To  ☐ From  ) Seller: | | 3,943,670.84 |

Substitute Form 1099 Seller Statement:    The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

Seller Instructions:    If the real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

Borrower's Initials: [signature]

Seller's Initials: [signature]

DoubleTime®

| HUD-1 | U.S. Department of Housing and Urban Development | | Page 2 |
|---|---|---|---|
| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
| 700. Total Sales/Broker's Comm. based on price | $4,125,000.00 @ | % = 206,250.00 | |
| 701. | $01,350.00 | To Realty R Us | |
| 702. | | % to | |
| 703. Commission paid at settlement | | | 206,350.00 |
| 800. | | | |
| 801. Loan origination fee | % to | | |
| 802. Loan discount | % to | | |
| 803. Appraisal fee | to | | |
| 804. Credit report | to | | |
| 805. Lender's inspection fee | to | | |
| 806. Mortgage insurance application fee | to | | |
| 807. Assumption Fee | to | | |
| 808. | to | | |
| 809. | to | | |
| 810. | to | | |
| 811. | to | | |
| 900. | | | |
| 901. Interest from | to @ | /day | |
| 902. Mortgage insurance premium for | months to | | |
| 903. Hazard insurance premium for | years to | | |
| 904. Flood insurance premium for | years to | | |
| 905. | years to | | |
| 1001. Hazard Insurance | months @ | per month | |
| 1002. Mortgage Insurance | months @ | per month | |
| 1003. City property taxes | months @ | per month | |
| 1004. County property taxes | months @ | per month | |
| 1005. Annual assessments | months @ | per month | |
| 1006. Flood Insurance | months @ | per month | |
| 1007. | months @ | per month | |
| 1008. | months @ | per month | |
| 1009. Aggregate accounting adjustment | | | |
| 1101. Settlement or closing fee | to | | 735.00 |
| 1102. Abstract or title search | to Harbor Title, Inc. | | |
| 1103. Title examination | to | | |
| 1104. Title insurance binder | to | | |
| 1105. Document preparation | to | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's Fees | to Goldman & Hunt, P.A./Greenberg Traurig P.A. | 1,500.00 | 4,000.00 |
| (includes above item numbers: | ) | | |
| 1108. Title Insurance | to WFG National Title Insurance Company/Harbor Title, Inc. | 12,987.80 | |
| (includes above item numbers: | ) | | |
| 1109. Lender's coverage (Premium): | | | |
| 1110. Owner's coverage (Premium): | $4,125,000.00 ($12,987.80) | | |
| 1111. Endorse | | | |
| 1112. | to | | |
| 1113. Carrier, copies, faxes, long distance | to | | |
| 1201. Recording fees | Deed | $16.50 Mortgage(s) | Releases | 16.50 | |
| 1202. City/county tax/stamps | Deed | Mortgage(s) | | |
| 1203. State tax/stamps | Deed | $24,750.00 Mortgage(s) | 24,750.00 | |
| 1204. E-recording Fee | to Harbor Title, Inc. E-Recording | 4.00 | |
| 1205. | to | | |
| 1301. Tax & Lien Search | to One-Stop Lien Search, LLC | 150.00 | |
| 1302. Hook-up Fee | to Florida Power & Light Company | 500.00 | |
| 1303. Initial Contribution Condo Assn | to Bal Harbour North South Condo Assn Inc. | 95.24 | |
| 1304. Condo Estoppel 2/01/13-03/01/13 | to Bal Harbour North South Condo Assn Inc. | 0.00 | |
| 1305. Condo Estoppel 02/01/13-03/01/13 | to Bal Harbour North South Condo Assn Inc. | 0.00 | |
| 1306. Initial/Additional Initiation/Condo/App fee | to Bal Harbour Nickel, LLC | 6,196.78 | |
| 1307. Hotel/Additional/Condo 02/01/13-03/01/13 | to Bal Harbour Nickel, LLC | 3,087.50 | |
| 1308. Hotel/Additional/Condo 02/01/13-03/01/13 | to Bal Harbour Nickel, LLC | 5,857.50 | |
| 1309. Additional expenses (See Attached Addendum) | | 0.00 | |
| 1400. Total Settlement Charges (Enter on line 103, Section J and 502, Section K) | | 53,245.50 | 235,100.00 |

Borrower's Initials:

Seller's Initials:

DoubleTime®

# HUD-1 SETTLEMENT STATEMENT
## ADDENDUM

| | |
|---|---|
| **FILE NUMBER:** | 1301-000F1T |
| **NAME OF BORROWER:** | Arms Properties IV, LLC, a Florida limited liability company |
| **Address of Borrower:** | 164 Hoyt Street, Brooklyn, New York 11217 |
| **NAME OF SELLER:** | 9701 Collins Avenue, LLC, a Delaware limited liability company |
| **Address of Seller:** | 9002 San Marino Court, Orlando, Florida 33870 |
| **NAME OF LENDER:** | |
| **Address of Lender:** | |
| **PROPERTY LOCATION:** | 9701 Collins Avenue, Unit 2104-S, Bal Harbour, Florida 32154 |
| **SETTLEMENT AGENT:** | Harbor Title, Inc. |
| **Place of Settlement:** | 1000 Seminole Drive, Suite 300 , Fort Lauderdale, Florida 33304 |
| **SETTLEMENT DATE:** | 3/1/13 |
| | **DISBURSEMENT DATE:** 3/1/13 |

## Itemization of Additional HUD Line Items

| Description | Payee | Borrower POC | Seller POC | Borrower | Seller |
|---|---|---|---|---|---|
| Initial Contribution Master Assn $4.79 psc | Bal Harbour Resort Master Association, Inc. | | | 8.86 | |
| Master Maint 02/01/13-02/28/13 | Bal Harbour Resort Master Association, Inc. | | | 4.78 | |
| Master Maint 03/01/13-03/31/13 | Bal Harbour Resort Master Association, Inc. | | | 4.79 | |
| Initial Shared Lot/Owner Cost $0-$2.36 psc | Bal Harbour Hotel, LLC | | | 1336.62 | |
| Hotel Shared Lot/Owner Costs 02/01/13-02/28/T: Bal Harbour Hotel, LLC | | | 643.36 | |
| Hotel Shared Lot/Owner Costs 03/01/13-03/31/T: Bal Harbour Hotel, LLC | | | 643.33 | |
| Reimbursement for Corporate Filing | Goldman & Rees, P.A. | | | 130.00 | |
| | **Total HUD Line 1300 Expenses:** | 0.00 | 0.00 | 2,722.13 | 0.00 |

This addendum is attached to a HUD-1 Settlement Statement executed by the aforementioned parties and is attached to said HUD Statement for the purpose of itemizing expenses reflected on line 1300 of page 2 thereof.

Borrower's initials

Seller's initials

Dolphin Title®

# HUD-1 SETTLEMENT STATEMENT ADDENDUM

File Number:     1301-09HT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

## Borrower(s)

Arous Properties IV, LLC
a Florida limited liability company

By:  Ryard Holdings Limited
     its Managing Member

By:  _____
     ARISTODOULOS G. VASSILIADES

(Corporate Seal)

## Seller(s)

9701 Collins Avenue, LLC
a Delaware limited liability company

By:  _____   attorney
     Barbara H. Overton                 in fact.
     Vice President

(Corporate Seal)

## Settlement Agent

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Harbor Title, Inc.

By: _____     Date: _____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

DoubleTime®

GREENBERG TRAURIG
TRUST ACCOUNT
333 Avenue of the Americas
Suite 4400
Miami, FL 33131

No. 038836

53-954
670

NOT NEGOTIABLE AFTER 90 DAYS FROM ISSUE

PAY  Two hundred six thousand two hundred fifty and 00/100************

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 02/04/13 | 38836 | $***206,250.00*** |

TO THE
ORDER
OF      Realty R Us

TWO SIGNATURES REQUIRED FOR AMOUNTS OVER $10,000.00

GREENBERG TRAURIG
TRUST ACCOUNT

Sabadell United Bank, N.A.

⑈038836⑈ ⑆067004646⑆ 0055057⑈53⑈

---

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|
| Check #:   38836 | Vendor ID: | Check Date:  Feb 04/13 | |

| Trust Number | Client | Matter | Payee | Amount |
|--------------|--------|--------|-------|--------|
| 15 | 119930 | 032104 | Realty R Us | 206,250.00 |
| | | | SABADELL UNITED – CK#38836 | |
| | | | Realty R Us | |
| | | | 119930.032104 GAS/dv r/e commission Unit# 2104-S | |

DETACH

PLEASE DETACH BEFORE DEPOSITING

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|

DETACH

Exhibit "8"

| B. Type of Loan | | | | | |
|---|---|---|---|---|---|
| ○ 1. FHA  ○ 2. FmHA  ○ 3. Conv. Unins. | | | 5. File Number 5301-017HT | 7. Loan Number | 8. Mortg. Ins. Case Num. |
| ○ 4. VA  ○ 5. Conv. Ins. | | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | |
|---|---|
| D. NAME OF BORROWER: Address of Borrower: | Sunshine Registry, LLC, a Florida limited liability company 154 Hoyt St, Brooklyn, New York 11217 |
| E. NAME OF SELLER: Address of Seller: | 8701 Collins Ave, LLC, a Delaware limited liability company 9602 San Marco Court, Orlando, Florida 32819    TIN: |
| F. NAME OF LENDER: Address of Lender: | |
| G. PROPERTY LOCATION: | 8701 Collins Avenue, Unit 2404-S, Bal Harbour, Florida 33154 |
| H. SETTLEMENT AGENT: Place of Settlement: | Harbor Title, Inc.    TIN: 27-2903157 1000 Seminole Drive, Suite 500, Fort Lauderdale, Florida 33304    Phone: 954-368-4311 |
| I. SETTLEMENT DATE: | 2/19/13    DISBURSEMENT DATE: 2/19/13 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | 4,378,000.00 | 401. Contract sales price | 4,378,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 82,833.94 | 403. | |
| 104. 1.70% Consignment Fee | 74,372.00 | 404. 1.70% Consignment Fee | 74,372.00 |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower | 4,535,205.94 | 420. Gross amount due to seller | 4,448,372.00 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | 1,312,826.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 222,750.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Principal balance of second mortgage | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposits held by seller | |
| 207. Principal amt of mortgage held by seller | | 507. Principal amt of mortgage held by seller | |
| 208. Credit for SHIP and Doc Stamps | 34,184.00 | 508. Credit for SHIP and Doc Stamps | 24,284.50 |
| 209. Credit for Owner's Title Premium | 13,611.50 | 509. Credit for Owner's Title Premium | 13,611.50 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes from 01/01/13 to 02/19/13 | 7,415.22 | 511. County taxes from 01/01/13 to 02/19/13 | 7,415.22 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower | 1,359,694.29 | 520. Total reductions in amount due seller | 268,946.22 |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | 4,602,208.98 | 601. Gross amount due to seller (line 420) | 4,448,372.00 |
| 302. Less amount paid by/for the borrower (line 220) | (1,359,694.29) | 602. Less total reductions in amount due seller (line 520) | (268,946.22) |
| 303. Cash ☑ From ☐ To ☐ Borrower: | 3,142,812.74 | 603. Cash ☑ To ☐ From ☐ Seller: | 4,179,426.76 |

Substitute Form 1099 Seller Statement:    The information contained in blocks E, G, H, and I and on line 401 is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

Seller Instructions:    If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

Borrower's Initials:    RD

Seller's Initials:

DoubleTime®

| HUD-1 | U.S. Department of Housing and Urban Development | | Page 2 |
|---|---|---|---|
| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
| 700. Total Sales/Broker's Comm. based on price $4,375,000.00 @ % = 216,750.00 | | | |
| 701. $216,750.00 % to Realty R Us | | | |
| 702. % to | | | |
| 703. Commission paid at Settlement | | | 216,750.00 |
| 704. | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. Loan origination fee % to | | | |
| 802. Loan discount % to | | | |
| 803. Appraisal fee to | | | |
| 804. Credit report to | | | |
| 805. Lender's inspection fee to | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption Fee to | | | |
| 808. to | | | |
| 809. to | | | |
| 810. to | | | |
| 811. to | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from to @ /day | | | |
| 902. Mortgage insurance premium for months to | | | |
| 903. Hazard insurance premium for years to | | | |
| 904. Flood insurance premium for years to | | | |
| 905. years to | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | |
| 1001. Hazard insurance months @ per month | | | |
| 1002. Mortgage insurance months @ per month | | | |
| 1003. City property taxes months @ per month | | | |
| 1004. County property taxes months @ per month | | | |
| 1005. Annual assessments months @ per month | | | |
| 1006. Flood insurance months @ per month | | | |
| 1007. months @ per month | | | |
| 1008. months @ per month | | | |
| 1009. Aggregate accounting adjustment | | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to Harbor Title, Inc. | | 210.00 | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's Fees to Goldman & Fives, P.A./ Greenberg Traurig P.A. | | 1,200.00 | 4,906.00 |
| (includes above item numbers: ) | | | |
| 1108. Title insurance to WFG National Title Insurance Company/Harbor Title, Inc. | | 13,612.50 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage (Premium): | | | |
| 1110. Owner's coverage (Premium): $4,375,000.00 ($13,612.50) | | | |
| 1111. Endorsement | | | |
| 1112. Reimbursement for Corporate Filing to Goldman & Fives, P.A. | | 130.00 | |
| 1113. Courier, Copies, faxes, long distance, ask to Harbor Title, Inc. | | 100.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees Deed 316.00 Mortgage(s) Release | | 76.50 | |
| 1202. City/county tax/stamps Deed Mortgage(s) | | | |
| 1203. State tax/stamps Deed $26,250.00 Mortgage(s) | | 26,250.00 | |
| 1204. E-recording Fee | | 4.50 | |
| 1205. to | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Tax & Lien Search to One-Stop Lien Search, LLC | | 135.00 | |
| 1302. Hook Up Fee to Florida Power & Light Company | | 250.00 | |
| 1303. Initial Contribution Condo Assoc $9.44 to Bal Harbour North South Condo Assn Inc. | | 18.88 | |
| 1304. Condo Maint 2/19/13-2/28/13 to Bal Harbour North South Condo Assn Inc. | | 3.74 | |
| 1305. Condo Maint 3/1/13-3/31/13 to Bal Harbour North South Condo Assn Inc. | | 9.44 | |
| 1306. Int/Cont Hotel Unit/Shared Cost $2083.47/mo to Bal Harbour Hotel, LLC | | 4,706.94 | |
| 1307. Hotel Unit/Shared Costs 2/19/13-2/28/13 to Bal Harbour Hotel, LLC | | 624.55 | |
| 1308. Int/Cont/Club Association $11.71 per to Bal Harbour Resort Master Association, Inc. | | 11.42 | |
| 1309. Flood Elevation to to Landmark Land | | 1,333.40 | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | 48,169.83 | 221,756.00 |

Borrower's Initials: RD    Seller's Initials:

DoubleTime®

# HUD-1 SETTLEMENT STATEMENT
## ADDENDUM

| | |
|---|---|
| **FILE NUMBER:** | 1301-011HT |
| **NAME OF BORROWER:** Address of Borrower: | Sonshine Regency, LLC, a Florida limited liability company 164 Hoyt St, Brooklyn, New York 11217 |
| **NAME OF SELLER:** Address of Seller: | 9701 Collins Ave, LLC, a Delaware limited liability company 9002 San Marco Court, Orlando, Florida 32819 |
| **NAME OF LENDER:** Address of Lender: | |
| **PROPERTY LOCATION:** | 9701 Collins Avenue, Unit 2404-S, Bal Harbour, Florida 33154 |
| **Place of Settlement:** | Harbor Title, Inc. 1000 Sawgrass Drive, Suite 500, Fort Lauderdale, Florida 33304 |
| **SETTLEMENT DATE:** | 2/19/13    DISBURSEMENT DATE:  2/19/13 |

### Itemization of Additional HUD Line Items

| Description | Payee | Borrower POC | Seller POC | Borrower | Seller |
|---|---|---|---|---|---|
| Master Maint 2/19/13-2/28/13 | Bal Harbour Resort Master Association, Inc. | | | 3.20 | |
| Master Maint 3/1/13-3/31/13 | Bal Harbour Resort Master Association, Inc. | | | 6.71 | |
| IntlCond HotelSharedLotOwnerCost$991.67 pm.Bal | Harbour Hotel, LLC | | | 1763.74 | |
| HotelSharedLotOwner Costs 2/19/13-2/28/13 | Bal Harbour Hotel, LLC | | | 346.90 | |
| HotelSharedLotOwnerCosts 3/1/13-3/31/13 | Bal Harbour Hotel, LLC | | | 691.67 | |
| HotelLotSharedCost 3/1/13-3/31/13 | Bal Harbour Hotel, LLC | | | 2383.47 | |
| | **Total HUD Line 1308 Expense:** | 0.00 | 0.00 | 5,353.49 | 0.00 |

This addendum is attached to a HUD-1 Settlement Statement executed by the aforementioned parties and is attached to said HUD Statement for the purpose of itemizing expenses reflected on line 1308 of page 2 thereof.

Borrower's Initial(s):                    Seller's Initial(s):

# HUD-1 SETTLEMENT STATEMENT ADDENDUM

**File Number:** 1301-017HT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

## Borrower(s)

Sunshine Regency, LLC
a Florida limited liability company

By: _____
Dennis Rogachev
Manager Member

(Corporate Seal)

## Seller(s)

9701 Collins Ave, LLC
a Delaware limited liability company

By: _____ Rita Domenech, attorney in fact
Barbara E. Overton
Vice President

(Corporate Seal)

## Settlement Agent

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Harbor Title, Inc.

By: _____    Date: 2/18/13

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

GREENBERG TRAURIG
TRUST ACCOUNT
333 Avenue of the Americas
Suite 4400
Miami, FL 33131

No. 038955

63 964
670

NOT NEGOTIABLE AFTER 90 DAYS FROM ISSUE

PAY   Two hundred eighteen thousand seven hundred fifty and 00/100****

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 02/20/13 | 38955 | $ ***218,750.00*** |

TO THE
ORDER
OF

Realty R US Corp

TWO SIGNATURES REQUIRED FOR AMOUNTS OVER $10,000.00

GREENBERG TRAURIG
TRUST ACCOUNT

Sabadell United Bank, N.A.

---

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|

Check #:   38955                    Vendor ID:                    Check Date:  Feb 20/13

| Trust Number | Client | Matter | Payee | Amount |
|--------------|--------|--------|-------|--------|
| 15 | 119930 | 032404 | Realty R US Corp | 218,750.00 |
| | | | SABADELL UNITED – CK#38955 | |
| | | | Realty R US Corp | |
| | | | 119930.032404 GAS/dv re commission Unit# 2404-S | |

DETACH

---

PLEASE DETACH BEFORE DEPOSITING

| DATE | DESCRIPTION | REFERENCE | BALANCE |
|------|-------------|-----------|---------|

DETACH

GT03/13/13PP1-0019

# Exhibit "9"

03/14/2013 19:42 FAX 7182324333

ARD, PLLC

@001

